**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| AMEER A. HASHW, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT STORES NATIONAL BANK and FDS BANK,<br><br>    Defendants. | Case No. 0:13-cv-00727 (RHK/BRT) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>OBJECTIONS TO CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

Page

I.    THE SETTLEMENT ........................................................................... 1

II.   THE OBJECTIONS SHOULD BE OVERRULED. ........................................... 3

      A.   The Court Should View the Objections with Skepticism, and
           Overrule all Invalid Objections. ................................................. 4

      B.   The Notice Program Was the Best Practicable under the
           Circumstances. ......................................................................... 8

      C.   The Release Is Reasonably Tailored to the Claims in this Case. .......... 10

      D.   The Fees Requested Represent the Market Rate, and Are
           Reasonable. ............................................................................. 12

      E.   The Requested Incentive Award Is Reasonable. ............................. 15

      F.   The Settlement Is Structured to Minimize or Eliminate Cy Pres. ........ 17

      G.   All Other Objections Should Be Overruled. .................................... 19

           1.    Accepting Other Cases ....................................................... 19

           2.    Per-Call Award ................................................................. 19

           3.    Termination Provision ........................................................ 20

           4.    Objections to be Sent to Court or Counsel ............................. 20

           5.    No Fines/Penalties ............................................................. 20

           6.    Cap on Class Member Recovery .......................................... 21

           7.    Affirmation on Claim Form ................................................. 22

           8.    Inclusion of Cell Phone Number .......................................... 23

III.  CONCLUSION .................................................................................. 24

- i -

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASE LAW

*Arnett v. Bank of Am., N.A.*,
    No. 11-1372, 2014 WL 4672458 (D. Or. Sept. 18, 2014)........................................ 5

*Arthur v. SLM Corp.*,
    No. 10-198, DE 264 (W.D. Wash. Sept. 14, 2012)................................................. 23

*Barnes v. Fleetboston Fin. Corp.*,
    No. 01-10395, 2006 WL 6916834 (D. Mass. Aug. 22, 2006)................................. 5

*Benzion v. Vivint, Inc.*,
    No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015).................................................. 15

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .............................................................................................. 15

*Dennis v. Kellogg Co.*,
    No. 09-1786, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .................................. 6

*Desai v. ADT Security Servs., Inc.*,
    No. 11-1925, DE 243 (N.D. Ill. Feb. 27, 2013) ................................................... 15

*Elliott v. Sperry Rand Corp.*,
    680 F.2d 1225 (8th Cir. 1982) ............................................................................... 4

*Giovanniello v. ALM Media, LLC*,
    726 F.3d 106 (2d Cir. 2013)................................................................................. 11

*Horn v. Bank of Am., N.A.*,
    No. 12-1718, 2014 WL 1455917 (S.D. Cal. Apr. 14, 2014) .................................. 7

*In re BankAmerica Corp. Sec. Litig.*,
    775 F.3d 1060 (8th Cir. 2015) ............................................................................. 17

*In re Capital One TCPA Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015)............................................................... 14, 19

*In re Cardinal Health, Inc. Sec. Litig.*,
   550 F. Supp. 2d 751 (S.D. Ohio 2008) ................................................................ 4

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.*,
   302 F.3d 799 (8th Cir. 2002) ............................................................................... 21

*In re Oil Spill by Oil Rig Deepwater Horizon*,
   295 F.R.D. 112 (E.D. La. 2013) ............................................................................ 7

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................................... 21

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   No. 14-2522, 2016 WL 259676 (D. Minn. Jan. 21, 2016) ..................................... 7

*In re UnitedHealth Group Inc. PSLRA Litig.*,
   643 F. Supp. 2d 1107 (D. Minn. 2009) ................................................................ 5

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ................................................................. 12, 15, 16

*In re WorldCom Inc. Sec. Lit.*,
   No. 02-3288, 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ................................ 22

*Johnston v. Comerica Mortg. Co.*,
   83 F.3d 241 (8th Cir. 1996) ................................................................................ 13

*Kolinek v. Walgreen Co.*,
   No. 13-4806, 2015 WL 7450759 (N.D. Ill. Nov. 23, 2015) .................................. 14

*Lees v. Anthem Ins. Companies Inc.*,
   No. 13-1411, 2015 WL 3645208 (E.D. Mo. June 10, 2015) ................................ 13

*Marshall v. Nat'l Football League*,
   787 F.3d 502 (8th Cir. 2015) .............................................................................. 18

*O'Keefe v. Mercedes-Benz USA, LLC*,
   214 F.R.D. 266 (E.D. Pa. 2003) ........................................................................... 4

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ............................................................................ 13

*Petruzzi's Inc. v. Darling-Delaware Co.*,
    983 F. Supp. 595 (M.D. Pa. 1996) ................................................................ 13, 14

*Ramsey v. Sprint Commc'ns Co.*,
    No. 11-3211, 2012 WL 6018154 (D. Neb. Dec. 3, 2012) .................................... 13

*Roberts v. Electrolux Home Products, Inc.*,
    No. 13-2339, 2014 WL 4568632 (C.D. Cal. Sept. 11, 2014) ................................. 7

*Sauby v. City of Fargo*,
    No. 07-10, 2009 WL 2168942 (D.N.D. July 16, 2009) ........................................ 15

*Schwarm v. Craighead*,
    233 F.R.D. 655 (E.D. Cal. 2006) ......................................................................... 16

*Sylvester v. CIGNA Corp*,
    369 F. Supp. 2d 34 (D. Me. 2005) ....................................................................... 13

*Vandervort v. Balboa Capital Corp.*,
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) ................................................................... 16

*Watkins v. Simmons & Clark, Inc.*,
    618 F.2d 398 (6th Cir. 1980) ............................................................................... 16

*Wilkins v. HSBC Bank Nevada, N.A.*,
    2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ..................................................... 14, 19

*Yarrington v. Solvay Pharm., Inc.*,
    697 F. Supp. 2d 1057 (D. Minn. 2010) ............................................................... 13

## STATUTORY AUTHORITY

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................ 11

47 U.S.C. § 227(b)(3) ...................................................................................... 2, 17

Pub. L. No. 102–243 (1991) ................................................................................ 18

Out of a total estimated 1.2 million-person Settlement Class, only five individuals—less than 0.00042%—objected to the proposed class action settlement of this action. This statistically insignificant number of objections compares favorably to the outstanding 20%-plus claims rate, and demonstrates the Settlement Class' overwhelming support for the Settlement. The handful of confused, mistaken, erroneous, or outright frivolous objections submitted by these largely professional objectors fail to overcome the overall reasonableness of the Settlement, and the Court should grant Final Approval.

## I.   <u>THE SETTLEMENT</u>

Plaintiff filed this class action against Defendants Department Stores National Bank ("DSNB") and FDS Bank ("FDS") on March 29, 2013, seeking redress for automated calls Defendants allegedly made to himself and others in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (DE 30, Am. Compl. ¶¶ 1-3.) In the nearly three years since, the Parties have engaged in contested motion practice, extensive first and third-party discovery, and months of intense settlement negotiations. (Burke Decl. ¶ 13.) Plaintiff filed amended pleadings (DE 30), survived a motion to dismiss (DE 42, 55, 57, 68), and briefed and argued a motion to compel discovery (DE 59, 65, 69-70). Class Counsel propounded multiple sets of written discovery requests on Defendants, issued subpoenas to third parties with relevant information, and required Defendants to produce substantive class information as a precondition to settlement negotiations. (Burke Decl. ¶ 13.) The Settlement presently before the Court was reached only after months of back-and-forth between counsel, preceded by not one, but <u>two</u> all-day, in-person mediations before the Honorable Morton

Denlow (Ret.), and was conditioned on further confirmatory discovery conducted by Class Counsel. (Burke Decl. ¶ 13; Agr. ¶ 15.1.) The Settlement was unquestionably the result of extensive, arm's-length negotiations by informed counsel.

The Settlement is substantial. It requires Defendants to pay $12,500,000 into a non-reversionary Fund for the benefit of the Settlement Class, comprised of:

> All persons nationwide whose cellular telephone number, at any time on or after September 3, 2009 through July 22, 2015, Defendants (or either of their agents or affiliates) called using an artificial or prerecorded voice and/or using any automatic telephone dialing system where the call was placed for debt collection purposes in connection with a Macy's and/or Bloomingdale's credit card account and where the person called did not provide the number to Defendants and/or is not a person who had consented to receiving calls at that cellular telephone number. Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family.

(DE 113, at p. 2; Agr. ¶ 2.17.) Each Settlement Class Member who submitted a Valid Claim will receive a *pro rata* share of up to $750—more than the $500 typically afforded per violation under the TCPA, 47 U.S.C. § 227(b)(3)—after payment of any notice and administration costs, Class Counsel's fees and costs, and any award to Plaintiff for serving as representative of the Settlement Class. (Agr. ¶¶ 2.17, 2.28, 3.3.) To the extent administratively feasible after the initial distribution (i.e., each eligible Settlement Class Member would receive at least $3), the amount remaining from any uncashed settlement checks will be redistributed on a *pro rata* basis to eligible Settlement Class Members who cashed their first check. (Agr. ¶¶ 3.3, 3.7.) While necessarily *de minimis*, any amounts remaining thereafter will be distributed to Court-approved *cy pres* recipients (Agr. ¶ 3.8);

- 2 -

the Parties jointly propose two pro-consumer public interest non-profits, the Privacy Rights Clearinghouse and Consumer Federation of America. (DE 121, at p. 3.)

The Notice Program approved by the Court and administered by Heffler Claims Group LLC ("Heffler") was a resounding success. To date, 250,346 Claim Forms have been received, amounting to approximately **20.86%** of the estimated 1.2 million-member Settlement Class. (Finegan Decl. ¶ 4.) This extensive Notice Program included: (1) sending direct Email Notice to 1,951,545 potential Settlement Class Members identified through Defendants' records; (2) sending direct Mail Notice to an additional 2,766,024 potential Settlement Class Members identified through Defendants' records; (3) nationwide publication of the Publication Notice in both *People* magazine and *USA Today*; (4) the creation of a toll-free number for additional information; and (5) maintenance of a Settlement Website enabling Settlement Class Members to view the Long Form Notice, relevant court filings, and other information about the Settlement, and submit Claim Forms directly online. (DE 122 ¶¶ 5-15.) The combined direct notice programs alone are estimated to have reached approximately 77.06% of the entire Settlement Class. (DE 122 ¶ 14; Finegan Decl. ¶ 9.)

The Settlement is fair, reasonable, and adequate, provided the best notice practicable under the circumstances, and was met with overwhelming Settlement Class Member support. Final approval should be granted.

## II.   THE OBJECTIONS SHOULD BE OVERRULED.

Out of approximately 1.2 million Settlement Class Members, counsel have received five communications that are, or could possibly be construed as, objections. In

contrast, approximately 250,346 Claim Forms have been received, demonstrating that the overwhelming silent majority tacitly approve of the Settlement.[1] The five objections represent less than .00042% disapproval, whereas the 250,346 Claim Forms represent 20.86% approval. *See Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226 (8th Cir. 1982) (affirming approval of class action settlement despite more than a quarter of all class members objecting). The minimal objection to the Settlement favors its approval.

The objections, some of which were apparently ghost-written by undisclosed professional objector counsel (as discussed in section A), attack various aspects of the Settlement, including: the Notice Program (section B), release (section C), attorneys' fees (section D), incentive award (section E), and *cy pres* (section F). These are addressed below, and are followed by section G, with respect to any other objections.

### A.   The Court Should View the Objections with Skepticism, and Overrule all Invalid Objections.

"Federal courts are increasingly weary of professional objectors[.]" *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 (E.D. Pa. 2003) (citations omitted). "Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away." *In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008). As one court explained:

---

[1]   Additionally, only 35 persons opted out of the Settlement, or approximately 0.0029% of the total estimated Settlement Class. Claim Forms are in the process of being verified by the Claims Administrator, who will provide updated figures for the Court at or before the Final Approval Hearing.

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved…. Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Barnes v. Fleetboston Fin. Corp.*, No. 01-10395, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006); *see also In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108-1109 (D. Minn. 2009) (recognizing, in denying objectors' request for attorneys' fees, that "[t]heir goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement").

At least three of the five objections to the Settlement were submitted by serial objectors or professional objector counsel[2]—Susan House, Kelly Spann, and Caroline Tucker—and the Court should treat their objections accordingly. The circumstances of these generic, "kitchen sink" objections indicate that they are driven by a desire for self-gain, rather than the class' best interests. *See Arnett v. Bank of Am., N.A.*, No. 11-1372, 2014 WL 4672458, at *9 (D. Or. Sept. 18, 2014) ("The Court views these objections skeptically, as they were prepared by a professional objector who has repeatedly been

---

[2]   Ms. Bennett, who does not appear to be a serial objector, objects only on the basis that the Settlement does not address purported negative credit reporting affecting her personally. (Bennett Obj., at p. 1.) However, that concern falls outside the scope of this TCPA case, and no credit-related claim is released under the Settlement. (Agr. ¶ 2.23.) Mr. Vitale may be a serial objector, as well. *See, e.g., Arnett v. Bank of Am., N.A.*, No. 11-1372, DE 271-5 (D. Or. Aug. 26, 2014) (objection from a "Francis Vitale," using the same formatting and language as Objector Vitale in this case).

found by courts to have an improper purpose in filing objections."); *Dennis v. Kellogg Co.*, No. 09-1786, 2013 WL 6055326, at *4 n. 2 (S.D. Cal. Nov. 14, 2013) ("[W]hen assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first.") (citation omitted).

Beyond the questionable purpose of these objections, the objections themselves are invalid. The Court's Preliminary Approval Order required, among other things, that each objection be timely submitted, include the objector's address and telephone number called, and identify all counsel that represent the objector related to the Settlement—basic requirements with which these objectors failed to comply. DE 113, at p. 5. Objector Tucker's objection failed to meet the December 14, 2015 deadline, and was thus untimely. DE 119. Objector House refused to provide her cell phone number called, and redacted her address. (House Obj, at p 8, Ex. A.) Moreover, Objectors House and Spann failed to disclose the attorneys representing them with respect to the Settlement—one of whom, identified by Class Counsel, may soon be barred from practicing law. (Burke Decl. ¶ 17); *see In Matter of Palmer*, No. 12-O-16924, 2016 WL 364192, at *1 (Cal. Bar Ct. Jan. 6, 2016) (recommending 2-year suspension of J. Darrell Palmer's law license based on three counts of moral turpitude for the making of false statements in sworn affidavits filed in federal class actions regarding past history of attorney discipline).[3]

---

[3]     Class Counsel recognized Ms. House from an objection she filed in another case, through objector counsel J. Darrell Palmer. When Class Counsel reached out to her attorney in that matter, he confirmed that, while he didn't file an appearance in this case

This Court clearly instructed would-be objectors that it "will not consider an objection unless the objection includes all of the foregoing information" listed, and that failure will foreclose such individuals from "object[ing] to the Settlement at the Final Approval Hearing … [or] seeking any review of the Settlement by appeal or other means, … [and] will be deemed to have waived his, her, or its objections" to the Settlement. DE 113 at pp. 5-6; *see, e.g., Horn v. Bank of Am., N.A.*, No. 12-1718, 2014 WL 1455917, at *5 (S.D. Cal. Apr. 14, 2014) (ordering that Objector House's objection to proposed class settlement be stricken because, as in this case, she failed to "provid[e] information sufficient to confirm that [she was] a class member"). Given the improper intent behind these demonstrably invalid objections, they should be excluded from consideration.

---

because he was not licensed to practice in the District, he was assisting Ms. House with her *pro se* filing. (Burke Decl. ¶ 17.) Despite the fact that Mr. Palmer has not appeared on her behalf in this case, he refused to provide Ms. House's address information so that she could be sent filings in this matter, and has not identified any other attorneys representing her. (Burke Decl. ¶ 17.) *See, e.g., In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 159 (E.D. La. 2013) (acknowledging that "Mr. Palmer has been deemed a "serial objector" by several courts[,]" with him "admitting it was 'regrettable' that he had been found to have engaged in 'bad faith and vexatious conduct'"). Objector Spann's employer, Jonathan E. Fortman, Esq., is also a known class action objector attorney who claims not to have performed any representation as to Ms. Spann in these proceedings, but confessed that he might become involved on appeal. (Burke Decl. ¶ 17.) *See, e.g., Roberts v. Electrolux Home Products, Inc.*, No. 13-2339, 2014 WL 4568632, at *15 (C.D. Cal. Sept. 11, 2014) (overruling objections by Mr. Fortman's clients, finding that they "appear to have been made with an improper motive (to extract a fee and not to benefit the Class), … are meritless[,] … [and] … are driven by counsel well-known and recognized by Courts for routinely filing meritless objections to class action settlements") (citations omitted). Objector Tucker's counsel falls within the same category. *See In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2016 WL 259676, at *1 (D. Minn. Jan. 21, 2016) (requiring appeal bond for objectors, including the client of Ms. Tucker's attorney, Robert C. Black, III, noting that "[t]he Court rejected the objections to the settlement, finding that the objections had no merit, and in any event did not warrant rejection of the fair and reasonable settlement").

- 7 -

**B.     The Notice Program Was the Best Practicable under the Circumstances.**

The outstanding 20%-plus claims rate achieved in this matter invalidates any objection to the Notice Program in this case. Without any consideration for the costs of providing notice to a multimillion-person class—which would detract from the Fund from which Settlement Class Members are ultimately paid—Ms. House and Mr. Vitale baldly contend that "targeted internet advertising" should also have been included, that the choice of Publication Notice in *People* magazine and *USA Today* was inadequate, or that notice should "be published in [apparently, other] well-read periodicals."[4] (House Obj., at pp. 7-8; Vitale Obj., at p. 2.) Mr. Vitale nitpicks that the Claim Form's verification language should have included the phrase "to the best of my knowledge," and Ms. House objects to having to provide her cell phone number to permit confirmation of her status as a Settlement Class Member. (Vitale Obj., at p. 2; House Obj., at p. 8.)

The robust Notice Program implemented by the Claims Administrator ensured that the Settlement Class received the best notice practicable, satisfying the requirements of Rule 23 and due process. As explained in the preliminary approval papers, DE 108 at pp. 16-17, Defendants did not have reasonably useable data that would provide class member information for the period between October 2011 and February 2013. (Burke Decl. ¶ 14.)

---

[4]     Apparently using copied-and-pasted arguments from a prior objection to some other class action settlement, Ms. House at one point argues that the Notice Program included issuance of a press release, before concluding that notice should instead "be published in well-read periodicals." (House Obj., at pp. 7-8.) However, no press release is contemplated under the Settlement, and thus Ms. House's arguments about the Parties' purported "back-up plan … to utilize a press release" are irrelevant. (House Obj., at p. 7.)

In response to Class Counsel requiring substantive class information prior to any settlement discussions, Defendants had retained a third-party consulting firm, Cornerstone Research, to assist in identifying and, ultimately, compiling records of potential class members. (Finegan Decl. ¶ 10; Burke Decl. ¶ 14.) Through this process, two sources of potential class data were identified: (1) Macy's or Bloomingdale's accounts with associated cell phone numbers obtained from third-party vendors during the period from September 2009 through October 2011; and (2) persons whose cell phone, for the period from February 2013 through July 22, 2015, Defendants called in connection with collection efforts on a Macy's or Bloomingdale's credit card account. (Finegan Decl. ¶ 12; Agr. ¶ 7.1.) In the absence of complete class call data, these records (hereafter, the "Class List") served as the best—and, indeed, only—source for identifying Settlement Class Members for direct notice. (Finegan Decl. ¶ 12; Burke Decl. ¶ 14.)

From the Class List, the Claims Administrator was able to identify and send direct E-mail or Mail Notice to 4,717,569 potential Settlement Class Members. DE 122 ¶¶ 10-11. In order to account for the gap in class data—and as preliminarily approved by this Court—the Claims Administrator also published the Publication Notice in *USA Today* and *People* magazine, publications designed to efficiently notify as many Macy's and Bloomingdale's customers as practicable. (Finegan Decl. ¶¶ 21-22.) Settlement Class Members were also able to call a toll-free number for further information, and the Settlement Website, www.DepartmentStoreTCPASettlement.com, was created to provide the Long Form Notice and additional information about the Settlement, permit Settlement Class Members to download the Settlement Agreement and other filings, and even submit

- 9 -

Claim Forms directly, online. (Finegan Decl. ¶ 3.) In total, Heffler estimates that direct Email and Mail Notice resulted in an estimated deliverability rate of 96%, indeed exceeding the Federal Judicial Center Guidelines for adequate notice, to reach over 77% of all Settlement Class Members in this case. (Finegan Decl. ¶ 13); Fed. Judicial Center, Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide, at p. 3 (2010).

The objectors' belief that the claims process was "onerous" or that "th[e] notice plan is destined to fail and is contrary to the Rules" has been resolutely disproved by the class' overwhelming support for the Settlement—amounting to an outstanding 20%-plus claims rate. (House Obj., at pp. 2, 7; Finegan Decl. ¶ 4.) The Court has already preliminarily found that the Notice Program satisfies the requirements of Fed. R. Civ. P. 23 and due process, and it should affirm that finding at Final Approval.

### C.   The Release Is Reasonably Tailored to the Claims in this Case.

Objectors Tucker and Spann object to the scope of the Release, erroneously suggesting that, under the Settlement, Settlement Class Members would be precluded from bringing actions against the Released Parties for fraud, violations of the Fair Debt Collection Practices Act ("FDCPA") or Missouri Merchandising Practices Act, or for other causes of action not related to the alleged unlawful conduct at issue. This misinterprets the plain language of the Agreement.

Plaintiff's claims are based on automated collection calls he alleges Defendants made in violation of the TCPA's prohibition against "mak[ing] any call ... using any automatic telephone dialing system or an artificial or prerecorded voice ... to any

- 10 -

telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. §

227(b)(1)(A)(iii); (Am. Compl. ¶¶ 1-3). These calls were made in an attempt to collect

debt allegedly owed on Macy's and Bloomingdale's credit card accounts.  (Burke Decl. ¶

12; Am. Compl. ¶ 9.).[5]

> The Released Claims are appropriately limited to:
>
> any and all rights, duties, obligations, claims, actions, causes of action or
> liabilities … that arise out of or are related in any way to the actual or
> alleged use by FDS Bank, Macy's, Inc., Department Stores National Bank,
> or Citibank, N.A. or their agents or affiliates, of an artificial or prerecorded
> voice and/or of any automatic telephone dialing system … to make
> collection calls to collect on Macy's and/or Bloomingdale's credit card
> accounts….

(Agr. ¶ 2.23.) Thus, not only are the Released Claims limited by party; they are limited to

only those claims arising out of or related to the specific, allegedly illegal conduct upon

which Plaintiff's claims in this action are based—the "use … of an artificial or

prerecorded voice and/or of any automatic telephone dialing system … to make

collection calls to collect on Macy's and/or Bloomingdale's credit card accounts." (*Id.*)

Any other claims—including, for example, fraud committed during the course of any

such call—is simply not contemplated under the Settlement.[6]

---

[5]     Discovery confirmed that Citibank, N.A. owns Defendant DSNB, and serviced a
portion of the accounts at issue; whereas Defendant FDS Bank is owned by Macy's.
(Burke Decl. ¶ 12.)

[6]     The TCPA is subject to a 4-year statute of limitations period. *Giovanniello v. ALM
Media, LLC*, 726 F.3d 106, 115 (2d Cir. 2013). Plaintiff amended his complaint to assert
class claims on September 3, 2013. DE 30. Thus, the Release is limited in temporal scope
to any Released Claims which have accrued on or before July 22, 2015 (when the
Agreement was executed), for a Settlement Class called at any time between September
3, 2009 and that date. (Agr. ¶¶ 2.26, 13.1.)

The Settlement does not foreclose Settlement Class Members from pursuing fraud, FDCPA, or other claims against the Released Parties that are not based on automated collection calls for Macy's or Bloomingdale's credit card accounts.[7] The Release is appropriately limited to the parties and conduct at issue, and the objections should therefore be overruled.

### D.   The Fees Requested Represent the Market Rate, and Are Reasonable.

Objectors Spann, Vitale, House, and Tucker each challenge the requested attorney's fees. However, not only is the Settlement expressly <u>not</u> conditioned on the approval of attorneys' fees,[8] but as explained in Class Counsel's fee petition, the request of one-third of the total $12.5 million common fund is in line with other common fund cases. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving fees of 36% of the settlement fund that was guaranteed to be paid). The requested fee amount will fairly compensate Class Counsel for the substantial benefits obtained for the Settlement Class through the zealous prosecution of this action, for years, on an entirely contingent-fee basis, and should be approved by this Court. (Burke Decl. ¶ 18.)

Notwithstanding that the requested amount of fees is not a condition of the Settlement, the requested amount is consistent with other cases. Indeed, in "the Eighth

---

[7]   For example, Ms. Bennett's objection that the Settlement does not address purported individual negative credit reporting issues falls entirely outside the scope of this TCPA action; no credit-related claim is released under the Settlement. (Agr. ¶ 2.23.)

[8]   Section 10.1 of the Settlement Agreement expressly provides that that "Court approval of attorneys' fees and costs, or their amount, will not be a condition of the Settlement." Thus, if the Court deems any portion of the request amount of attorneys' fees (and/or the incentive award, as discussed below) excessive, the Court may award a lower amount, but the requested amount is not a grounds for invalidating the Settlement.

Circuit, courts have routinely awarded attorney fees ranging from 25% to 36% of a common fund under the percentage-of-the-fund method." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010). The Eighth Circuit has expressly recognized that a percentage of the fund fee determination may be more appropriate for non-fee shifting matters such as this one. *Johnston v. Comerica Mortg. Co.*, 83 F.3d 241, 244–46 (8th Cir. 1996). And, Ms. House's objection aside, "a lodestar analysis is not necessary if the fee does not seem excessive as a percentage of the recovery." *Ramsey v. Sprint Commc'ns Co.*, No. 11-3211, 2012 WL 6018154, at \*5 (D. Neb. Dec. 3, 2012) (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)).

Contrary to the assertions of Objector House (House Obj. at pp. 3-4), this is not a "claims-made" settlement. Defendants here will pay an "all-in" $12,500,000, regardless of whether *any* Settlement Class Members at all submitted claims. Thus, cases cited by objectors regarding confusing, reversionary settlements are inapposite. *Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595 (M.D. Pa. 1996), was a complex coupon settlement, where the record contained scant evidence as to what the value or redemption rate the coupons would be, *Id.* at 601, and *Sylvester v. CIGNA Corp*, 369 F. Supp. 2d 34, 45 (D. Me. 2005), was structured so that unclaimed funds would revert to the defendant.

In contrast, here, Defendants will pay a liquidated, non-reversionary sum of $12,500,000, regardless of how many Settlement Class Members submit Claim Forms. This case therefore does not involve any questions as to whether fees should be based upon the "potential" amount of class member recoveries—all of the $12.5 million Fund will be paid by Defendants. *Cf. Lees v. Anthem Ins. Companies Inc.*, No. 13-1411, 2015

- 13 -

WL 3645208, at *4 (E.D. Mo. June 10, 2015) (reducing fees in TCPA class settlement to one-third of actual settlement fund, rather than one-third of the *potential* fund had other conditions been met). Moreover, because this is a cash settlement, there exists no sticky issues concerning valuation of class recovery like there were in *Petruzzi's*. *Id.* at 604-05.

Although the excellent claims rate here results in a lower individual payment amount, the amount of the Fund when considered in light of the number of estimated class members compares very favorably to most other TCPA settlements. Dividing the Defendants' $12,500,000 payment by the estimated 1.2 million Settlement Class Members results in $11.36 per individual. An "apples to apples" calculation for several other TCPA settlements reveals that this Settlement is multitudes better than others:

- *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) $75,455,099 divided by 17,522,049 class members, equals $4.31;

- *Kolinek v. Walgreen Co.*, No. 13-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) (finding $30 anticipated individual recovery "comparable to the recovery plaintiffs have collected in similar TCPA cases," and noting that, while "[t]hese objectors are right that this $11 million settlement equates to roughly $1.20 per class member, … that number is misleading because it is premised on the assumption that every class member will submit a valid claim"); and

- *Wilkins v. HSBC Bank Nevada, N.A.*, 2015 WL 890566, at *8 (N.D. Ill. Feb. 27, 2015): $39,975,000 divided by 9,065,262 class members equals $4.41.

Ms. House also claims that the Settlement should be rejected because the deadline for payment of fees is before the deadline for payment to the Settlement Class. First, *nobody* will receive payment until after the "Effective Date" which means that the Settlement has been finally approved, and all appeals or appeal deadlines, have been

exhausted. (Agr. ¶¶ 3.6, 10.1.) Second, the provisions in the Settlement permitting payment to the Settlement Class 30 days after the Effective Date account for the procedural reality that the Claims Administrator will need time after the Effective Date to perform accounting tasks, and print and mail tens of thousands of Settlement Class Members their checks. These administrative hurdles do not exist for payment of attorneys' fees, which can be effectuated through a single check or wire transfer.

Class Counsel obtained an excellent result here, at all times risking that they would receive nothing at all for their efforts. (Burke Decl. ¶ 18.) "[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted). The request for fees and costs in the amount of one-third of the Fund is reasonable and in line with fees approved in similar TCPA class settlements; Class Counsel's fee petition should be granted.

### E.   The Requested Incentive Award Is Reasonable.

Objectors Spann and Tucker object to the requested incentive award to Ameer Hashw of $27,500. Although admittedly on the higher side, service awards are commonplace in class action settlements, *In re U.S. Bancorp Litig.*, 291 F.3d at 1038, and the requested award is not outside the realm of awards typically approved by courts in TCPA cases. *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 incentive awards in TCPA class settlement); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award in TCPA class settlement); *Sauby v. City of Fargo*, No. 07-10, 2009 WL

- 15 -

2168942, at *3 (D.N.D. July 16, 2009) (approving $10,000 incentive award); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014) (awarding $10,000 incentive award in TCPA class settlement).

The Eighth Circuit has stated that the Court should consider "actions plaintiff took to protect class's interests [and the] degree to which class has benefitted from those actions…" in determining a class action plaintiff incentive award. *In re U.S. Bancorp*, 291 F.3d at 1038. During the litigation, Mr. Hashw declined multiple offers by Defendants to resolve this matter on an individual basis and, instead, continued the case, ultimately obtaining the exemplary class action settlement proposed here. (Burke Decl. ¶ 19; *see generally* Heaney Decl.) The individual settlement offers were substantial, very tempting, and represented fast, easy, risk-free money. But because no other person has filed a TCPA class action for the calls that are the subject of this case, had Mr. Hashw not rejected the offers, the Settlement Class would have received nothing at all.[9]

An award to Plaintiff for his service to the Settlement Class is entirely discretionary with the Court, and itself cannot serve as a basis for invalidating the

---

[9]     Despite the well-meaning behind the TCPA and other consumer statutes, consumers are often left with no viable means of relief aside from a class action, given the cost and time necessary for successful individual litigation compared to the relatively small amount of potential recovery. *See, e.g., Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 403-04 (6th Cir. 1980) ("Precisely because the violations are technical, ... most of the members of the consumer class will not be aware of them unless they should encounter a practicing attorney versed in the Act."); *Schwarm v. Craighead*, 233 F.R.D. 655, 664 (E.D. Cal. 2006) ("A class action is also superior to the litigation of the putative members' individual claims. Not only are most individual consumers unaware of their rights under the FDCPA, but also the size of the individual claims is usually so small there is little incentive to sue individually.") (citation and quotations omitted).

Settlement. *See* Agr. ¶ 11.1 ("Court approval of the incentive award, or its amount, will not be a condition of the Settlement."). However, Plaintiff respectfully submits that policy and fairness support rewarding Mr. Hashw for his dedication to the class, without which this $12,500,000 Settlement would never have occurred. Given the circumstances, Plaintiff's service award request is reasonable and should be granted.

### F.     The Settlement Is Structured to Minimize or Eliminate *Cy Pres*.

Objectors Spann, House and Tucker attack the *cy pres* in this case, claiming that the entire deal should be undone because the proposed *cy pres* recipients were not included in the Notice. These objections should be overruled.

The only money out of the $12,500,000 common fund that might possibly be provided to a *cy pres* recipient is uncashed checks. (Agr. ¶ 3.7.) However, consistent with *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015), the Settlement in this case was structured so that unclaimed funds will be redistributed to Settlement Class Members who cashed their settlement checks, *indefinitely*, until redistribution becomes administratively infeasible, i.e. settlement checks would be less than $3 apiece.[10] (Agr. ¶¶ 3.7-3.8.) Thus, also consistent with *In re BankAmerica Corp. Sec. Litig.*, any amounts that might go to *cy pres* will necessarily be *de minimis*, and the proposed recipients were not required to have been provided in the Notice. 775 F.3d at 1066 ("[U]nless the amount of funds to be distributed *cy pres* is de minimis, the district court should make a *cy pres*

---

[10]     The Agreement contemplates an *initial* individual Cash Award Payment of no more than $750—more than the $500 typically afforded per violation under the TCPA, 47 U.S.C. § 227(b)(3)—but the amount of any further distribution is entirely uncapped. (Agr. ¶ 3.3.) Given the high claims rate, however, this provision will not come into play.

proposal publicly available and allow class members to object[.]").

For any nominal *cy pres* amount, the Parties have proposed two recipients: Privacy Rights Clearinghouse ("PRC") and Consumer Federation of America ("CFA"). (DE 121, at p. 8.) PRC is a "nonprofit corporation with 501(c)(3) tax exempt status," whose "mission is to engage, educate and empower individuals to protect their privacy." https://www.privacyrights.org/content/about-privacy-rights-clearinghouse. CFA "is an association of non-profit consumer organizations that was established in 1968 to advance the consumer interest through research, advocacy, and education." http://consumerfed.org/about-cfa. Both organizations directly support consumer advocacy and awareness relating to telephone privacy,[11] the underlying interest Congress intended to serve in enacting the TCPA. *See* Pub. L. No. 102–243, § 2(12) (1991) ("Banning such automated or prerecorded telephone calls … is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."). Distribution to these proposed *cy pres* recipients will therefore constitute "the next best use" for indirect class benefits, consistent with the nature of the underlying action. *Marshall v. Nat'l Football League*, 787 F.3d 502, 522 (8th Cir. 2015).

Because the proposed *cy pres* recipients are appropriately tied to the nature of this action and the class' interests in telephone privacy, and the Settlement only contemplates a *de minimis cy pres* distribution after it is no longer feasible to redistribute the amount of

---

[11]     *See, e.g.,* http://consumerfed.org/issues/communications/telephone/, and https://www.privacyrights.org/topics/12 (both addressing the TCPA).

uncashed settlement checks to the Settlement Class directly, PRC and CFA should be designated by this Court as *cy pres* recipients under the Settlement.

### G.   All Other Objections Should Be Overruled.

#### 1.  Accepting Other Cases

Objector Spann points out that Class Counsel was able to do other work while working on this case. (Spann Obj., at pp. 1-2.) This is of course true: each of the plaintiff lawyers in this matter worked on other cases concurrently while also working on this case. It would be rare indeed for a lawyer to work on a single matter over a three-year period. The point that was trying to be conveyed in the fee petition, DE 115 at pp. 20-21, was that the number of active matters a lawyer can have on his docket is finite, and contingency fee plaintiff lawyers must make educated guesses as to which cases they want to expend resources pursuing. Class Counsel worked very hard on this case on a pure contingency basis, without any guarantee of recovery at all, and in lieu of spending time on other matters. (Burke Decl. ¶ 18.)

#### 2.  Per-Call Award

Objector Vitale maintains that class member settlement awards should have been linked to the number of calls received. But, as explained in the preliminary approval motion, data regarding the number of calls that each Settlement Class Member received was not available in this case. (Burke Decl. ¶ 14.) Moreover, even if per-call data had been available on a class-wide basis, including this variable would have caused administrative costs to skyrocket and render the Settlement infeasible. *Id.*; *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 793; *Wilkins*, 2015 WL 890566, at *8.

### 3.  Termination Provision

Mr. Vitale objects to the Parties being able to terminate the Settlement if confirmatory discovery did not confirm the estimated class size. (Vitale Obj. ¶ 6); (Agr. ¶ 14.1(e)). However, this provision was not invoked by either Party because confirmatory discovery performed *before* preliminary approval did, in fact, confirm the class size upon which the parties based the Settlement Agreement. (Burke Decl. ¶ 15.) This portion of the Vitale objection is therefore moot.

### 4.  Objections to be Sent to Court or Counsel.

Objector Vitale observes that the Settlement and Notice Program call for objections to be filed with the Court, but that the Settlement Website states that objections should only be sent to the parties' attorneys. This situation arises from an error in printing the Notice, and is not the result of any attempt to chill objections. All objections that were conveyed to the Parties in any manner whatsoever, including through the Court, were filed with this Court per the Preliminary Approval Order, DE 122-8, and are addressed herein. (Burke Decl. ¶ 16.)

### 5.  No Fines/Penalties

Mr. Vitale also argues that the Settlement is not fair and reasonable because there don't "seem to be any fines or penalties against FDS Bank or DSNB," and because Defendants did not admit liability. (Vitale Obj. ¶ 8.) Plaintiff respectfully submits that a settlement of disputed claims almost always includes an assertion that the defendant is not liable; otherwise, the plaintiff would simply obtain a judgment for the entire amount of the suit. Similarly, if a defendant were to admit liability as part of a settlement, any

- 20 -

class member excluding himself/herself could obtain a nearly automatic judgment for themselves. As explained in the Long Form Notice, "settlement offers class members who send in a valid claim form with less money than if they were to prevail at trial, in exchange for protection from the uncertainties and costs of such a suit." DE 122-3.

Additionally, Class Counsel respectfully submits that Defendants' non-reversionary payment of a $12,500,000 settlement amount constitutes a substantial fine/penalty, as well as a strong deterrent against future illegal conduct.

### 6. *Cap on Class Member Recovery*

The cap on class recovery is designed to serve several purposes. Class Counsel understands that, from the Defendants' standpoint, a *pro rata* cap provides comfort that no Settlement Class Member will receive a "windfall." From Class Counsel's point of view, inclusion of a cap as high as $750, along with a clear explanation that the final amount will likely be less, tends to drive up class member participation much more effectively than stating that there is no cap, or leaving the matter unexplained in the notice.

In all events, given the exemplary Notice Program here, at preliminary approval class counsel was reasonably sure that there would be a sufficient number of claims to nullify the agreed-upon $750 cap. Because the cap did not come into play, the objections surrounding it are moot. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding, because clause to which the objector complained applied only if the settlement was not approved, that "any argument regarding that clause is moot"); *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 302 F.3d 799, 801 (8th Cir.

- 21 -

2002) (finding, with respect to class settlement that provided varying degrees of relief based on a 0-1-2-3 scoring system, that objection to class members scored "0" receiving nothing was moot because no "0" scores were awarded).

### 7. Affirmation on Claim Form

The Vitale objection also challenges the propriety of requiring an affirmation that a Settlement Class Member received calls without consent. This objection is not well-founded. This Court approved use of this type of claim form in its preliminary approval order with good reason: the exact class is not known. A requirement that a purported Settlement Class Member sign a claim form saying that he or she is a class member is standard under such circumstances because it is "important in helping to insure that the settlement fund is distributed to class members who deserve to recover from the fund." *In re WorldCom Inc. Sec. Lit.*, No. 02-3288, 2004 WL 2591402, at *12 (S.D.N.Y. Nov. 12, 2004) (approving requirement that signature be under "penalty of perjury") (specific finding not affected by substantial subsequent history).

The list of persons to whom individual notice was sent included thousands who were not Settlement Class Members because they did not receive nonconsensual calls to their cell phones. Claim Forms were available to anyone in the United States (indeed, the world) via the Settlement Website. Were there no requirement that persons submitting Claim Forms affirmatively state that they were Settlement Class Members, there could have been thousands of Claim Forms sent in by persons who were not class members. The affirmation requirement was reasonable.

### 8. *Inclusion of Cell Phone Number*

Ms. House states in bold language at the end of her objection that she objects to submission of her cell phone number along with her objection because she does not want the number to be filed in the public domain. The Parties respect the privacy of class members, and accounted for this in several ways, including a proposed requirement in the Preliminary Approval Order that objections be filed with personally-identifying information redacted (DE 109-1, at p. 59)[12] and noting on the claim form that Settlement Class Members who wish to do so may enclose their claim form in an envelope, instead of merely returning a signed post card. DE 122-5, at p. 2.

Even though the Class List in this case is imperfect, inclusion of the cell phone number that was called along with an objection is an important check against potential fraud. It is no secret that several lawyers around the country have practices that are centered around objecting to class action settlements for the purpose of extorting money from Class Counsel on appeal. Indeed, attorney Darrell Palmer's *pro hac vice* admission to the Western District of Washington was revoked after it was disclosed that his application was not completely truthful. *Arthur v. SLM Corp.*, No. 10-198, DE 264 (W.D. Wash. Sept. 14, 2012). During a telephone call with Class Counsel Alexander Burke on December 30, 2015, Mr. Palmer confirmed that he represents Ms. House with respect to her *pro se* objection, but that he did not file an appearance because he is not admitted in

---

[12] This proposed requirement was removed from the Preliminary Approval Order by the Court. Instead, the Court removed the proposed requirement that objections be filed on the docket at all, other than in anticipation of Final Approval. (DE 113, at p. 8.)

the District of Minnesota. (Burke Decl. ¶ 17.) The requirement that Settlement Class Members provide the cell phone number called was reasonably targeted at preventing fraud in administering the Settlement, to the benefit of the Settlement Class.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Class Counsel respectfully requests that the Court grant final approval to the proposed Settlement of this action.

Dated: February 12, 2016                    Respectfully submitted,

AMEER A. HASHW, on behalf of himself and others similarly situated

By:   /s/ Mark L. Heaney
        Mark L. Heaney (No. 0333219)
        HEANEY LAW FIRM, LLC
        13911 Ridgedale Dr., Suite 110
        Minnetonka, MN 55305
        Telephone: (952) 933-9655
        Facsimile: (952) 544-1308
        mark@heaneylaw.com

        Alexander H. Burke (*pro hac vice*)
        BURKE LAW OFFICES, LLC
        155 N. Michigan Ave., Suite 9020
        Chicago, IL 60601
        Telephone: (312) 729-5288
        Facsimile: (312) 729-5289
        aburke@burkelawllc.com

        *Counsel for Plaintiff and the Settlement Class*